UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------------x
MAURICIO ARENAS, a/k/a DeGrupo,

                          *Plaintiff*,

         - against –

THE LIGHTSTONE GROUP, LLC, and
30-02 ASSOCIATES LLC

                        *Defendants*.
---------------------------------------------------------------------x

Index No.: 19-cv-4135

**FIRST AMENDED COMPLAINT**

**JURY TRIAL DEMANDED**

      Plaintiff, MAURICIO ARENAS a/k/a DeGrupo (hereinafter the "Plaintiff" or "DeGrupo" or "Arenas"), by his attorneys, PARDALIS & NOHAVICKA, LLP, as and for his complaint against defendants THE LIGHTSTONE GROUP, LLC ("Lightstone Group") and 30-02 ASSOCIATES LLC ("30-02 Associates") ( collectively the "Defendants") upon information and belief states as follows:

## NATURE OF THE ACTION

      1.     This action arises from a violation of the Copyright Act, U.S.C. §501 and infringement of federal and state common law copyrights. Plaintiff is an upcoming, highly regarded street artist whose artistic work includes a mural in the Long Island City area, in New York. Defendant Lightstone Group, a large private real estate investment company, knowingly and without authorization made extensive use of Plaintiff's artwork in a marketing campaign promoting Defendant 30-02 Associate's new development. Both defendants generated substantial profits out of the unauthorized commercial use of Plaintiff's artwork.

      2.     The artwork in question is a mural which Plaintiff painted onto a railway column in Long Island City. The mural features a depiction of Marilyn Monroe below the words "Welcome

to Long Island City", with the artist's signature appearing prominently on the right side (the "Work").

3. Plaintiff discovered that Defendant Lightstone Group has been using photographic reproductions of the Work to promote Defendant 30-02 Associate's ARC LIC building, located at 30-02 39th Avenue, Long Island City, NY 11101 ("ARC"), and seeks to assert federal and state copyright claims as well as damages for the infringement, including profits generated by the building's advertising campaign.

## JURISDICTION AND VENUE

4. This action arises under the Copyright Law of the United States 17 U.S.C. § 101 *et seq* (the Copyright Act). This Court has original subject matter jurisdiction over this action under 28 U.S.C. § 1331 (federal question), and 28 U.S.C. § 1338 (acts of Congress related to copyright).

5. This Court has personal jurisdiction over Defendants pursuant to N.Y.C.P.L.R. §§ 301 and 302(a)(1)-(4).

6. Upon information and belief, this Court has general jurisdiction over Defendants based on their location in New York and their continuous and systematic conduct of business within the State of New York, including, *inter alia*, Defendants' continuous contacts with New York, such as managing and owning real estate property in the State of New York.

7. Defendant Lightstone Group is a Limited Liability Company formed and existing under the laws of the State of New Jersey, registered to conduct business in the State of New York and with an office at 460 Park Avenue, New York, NY.

8. Defendant 30-02 Associates is a Limited Liability Company formed and existing under the laws of the State of Delaware, registered to conduct business in the State of New York and owning the ARC building in Long Island City, NY.

9. Upon information and belief, this Court also has specific personal jurisdiction over Defendant Lightstone Group under subsections (a)(1), (a)(2) of the New York long-arm statute (CPLR §302) because upon information and belief, Lightstone Group transacts business in this State and in this District, and has committed tortious acts of copyright infringement within this State and District. Upon information and belief, Defendant's acts of copyright infringement relevant to personal jurisdiction include, but are not limited to, the use of copyright materials in connection with the advertisement and marketing promotion of an apartment building in New York.

10. This Court has specific personal jurisdiction over Defendant 30-02 Associates under subsection (a)(4) of the New York long-arm statute (CPLR §302) because 30-02 Associates owns a real-estate property in this State and in this District.

11. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b), 1391(c) and 1400(b) because, *inter alia*, the Plaintiff's principal place of residence is located in this judicial district, the copyrighted material is owned by Plaintiff, Defendants committed acts of infringement within this judicial district, and personal jurisdiction over Defendant existed in this judicial district at the time this action was commenced.

## PARTIES

12. At all times hereinafter mentioned, Plaintiff, Mauricio Arenas, is an adult individual residing in the State of New York, with a residence located within Queens County, NY.

13. At all times hereinafter mentioned, Defendant Lightstone Group is a foreign privately held limited liability company doing business and having offices located within the State of New York.

14. At all times hereinafter mentioned, Defendant 30-02 Associates is a foreign

privately held limited liability company doing business, having offices and owning real-estate property within the State of New York.

15. Upon information and belief, Defendants are affiliated entities, operating and conducting business under the same source of control.

## FACTUAL ALLEGATIONS

16. Plaintiff is a highly regarded street artist and filmmaker operating under the pseudonym "DeGrupo". Plaintiff's work typically features stylized depictions of famous individuals which utilize a pallet of bright primary colors and a distinctive stenciling technique.

17. The mural in question is a painting of Marilyn Monroe in a red one-piece swimsuit with a horizontal heading reading "Welcome to Long Island City". Plaintiff's signature is conspicuously spray-painted vertically to Monroe's right in a matching red color. The mural is fixed on a pillar of a railway overpass located on 44th Road and 23rd Street in Long Island City.

18. Plaintiff chronicled the process of authoring the Work in three photographic posts to his Instagram account "@degrupo". The photos were posted on April 3 and June 8 of 2016.

19. The first picture, posted on April 3, 2016, depicts the image of Marilyn Monroe without the heading "Welcome to Long Island City". Accompanying the post are several "likes" and a comment from a user identifying DeGrupo as the author of this and other similar pieces of work in the area.

20. The second picture was posted on June 8, 2016; this was a "selfie" depicting the artist himself standing before the Work in the background.

21. Another picture was posted by another Instagram profile @licartsopen on April 19, 2016.

22. Upon information and belief, LIC Arts Open is a platform supporting galleries, art

4

organizations and artists in Long Island City, New York and organizing LIC Arts Open or LICAO, namely an annual weekend art events that take place every May.

23. Upon information and belief, LIC Arts Open's Instagram profile and posts are followed and reached by many Instagram users.

24. This LIC Arts Open's Instagram post, dated April 19, 2016, depicts the completed work, with full white backdrop and the "Welcome to Long Island City" headline. This post identified DeGrupo as the creator of the artwork with the "mention" @degrupo and is accompanied with several likes and a complementary comment from a user.

25. The Work is also displayed on the artist's website, www.degrupo.us (Exhibit A).

26. Plaintiff is the registered copyright owner of the Work; Plaintiff is in possession of the relevant Certificates of Registration, under Registration Numbers VAu 1-327-298, and VAu 1-353-597 (Exhibit B).

27. Plaintiff is a prominent member of the Long Island City artistic community. Upon information and belief, Plaintiff could have reasonably been identified as the creator of the artwork upon a cursory investigation.

28. Plaintiff has created many iconic murals in New York, particularly, in the area of Long Island City. The instant Work immediately attracted public's attention and became a landmark street-art creation beautifying the area.

29. Upon information and belief, in August 2017, Defendant 30-02 Associates started to actively advertise and promote its ARC property through Defendant Lightstone Group (the "ARC campaign").

30. Upon information and belief Defendant Lightstone Group undertook the execution of the ARC campaign and entered into agreements with third parties to build the campaign for the

advertisement of the ARC property.

31. Upon information and belief, with respect to the ARC campaign, Defendants which are affiliate entities acted as a single economic entity through a common source of control.

32. Plaintiff's mural was prominently displayed in Defendants' advertising materials.

33. Upon information and belief, Defendants expended a significant amount of money for the ARC campaign. Nevertheless, they failed to seek Plaintiff's permission for the use of its Work.

34. Upon information and belief, Defendants commercially exploited Plaintiff's iconic mural to advertise their multi-million real estate project without attributing to Plaintiff a reasonable license fee based on the purpose of the use of the artwork in question.

35. In or about March 2018, Plaintiff first became aware of Defendant's infringing activities, when driving past the ARC building and seeing his Work displayed on the side of the building (Exhibit C). Plaintiff soon thereafter discovered that photographs showing the Work also appeared on ARC's website, in a video promoting the building which has now been removed from their website (see Exhibit D for a screenshot of the video), and on printed brochures promoting ARC (Exhibit E) (the "infringing advertising materials")

36. On March 15, 2018, Plaintiff's then artist agent contacted Defendant Lightstone Group via email, informing Defendants of their infringing actions and requesting a meeting to resolve the matter.

37. On March 22, 2018, Defendant Lightstone Group responded to Plaintiff expressing a desire to amicably settle the matter.

38. However, Lightstone Group failed to provide Plaintiff with a fair settlement offer reflecting the scale of infringement. Defendants failed to pay Plaintiff the reasonable licensing fee, to which Plaintiff would be entitled for authorizing the use of his artwork for the advertising of a

luxury real-estate complex and a percentage of the profits that Defendants gained through the unauthorized use of Plaintiff's artwork in their advertising campaign.

39. Defendants continue to deny having infringed Plaintiff's artwork, despite having removed Plaintiff's artwork from the ARC website and ARC advertising materials following Plaintiff's email notifying them of the infringement.

## AS AND FOR THE FIRST CAUSE OF ACTION
### (Direct Copyright Infringement)

40. Plaintiff repeats, reiterates and re-alleges each and every allegation contained in paragraphs "1" through "39" above as if fully set forth herein.

41. Plaintiff's Work constitutes copyrightable subject matter under the Copyright Act, 17 U.S.C. §§101, et seq. Plaintiff has recorded the copyright in and to the Work with the United States Copyright Office and has complied with all applicable statutory registration requirements.

42. Plaintiff, as the sole copyright owner of the Work, has the exclusive right to reproduce the Work, distribute copies of the Work to the public, display the Work publicly or authorize the reproduction of the Work. Plaintiff is entitled to all the protections and remedies for the Work accorded to a copyright owner.

43. Upon information and belief, in direct violation of Plaintiff's exclusive rights, Defendants have directly infringed on the copyright in the Work by, among other things, publishing the Work to various websites, distributing advertising brochures and other advertising materials depicting Plaintiff's Work without Plaintiff's permission, authorization and consent.

44. Upon information and belief, Defendants or their agents never made a reasonable attempt to ascertain Plaintiff's identity despite Plaintiff's prominence in the local Long Island City artistic community.

45. Defendants have made a monetary profit through the unauthorized commercial use

of Plaintiff's Work for advertising purposes.

46. Defendants have utilized the mural's symbolic link to the Long Island City area to market the ARC project as an equally prominent fixture in the area.

47. Because of the mural's strong local association, Defendants' misuse of it has undoubtedly contributed to the Defendants' profits.

48. Furthermore, Defendants' infringement runs counter to Plaintiff's artistic intentions behind the Work. While Plaintiff created the Work as an expression of endearment to the Long Island City community, Defendants' unauthorized use of it to sell lavish apartments ignores Plaintiff's artistic intent and could damage Plaintiff's reputation as a respectable artist.

49. As a direct and proximate result of Defendants' infringement of Plaintiff's copyrights and exclusive rights under the Copyright Act, Plaintiff has suffered economic and reputational injury, and is entitled to his actual damages plus Defendants' profits from infringement, as will be proven at trial.

50. Plaintiff is entitled to his costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

## AS AND FOR THE SECOND CAUSE OF ACTION
### (Vicarious Copyright Infringement)

51. Plaintiff realleges and incorporates by reference each and every allegation contained in paragraphs "1" through "49" above as if fully set forth herein.

52. Defendants have infringed Plaintiff's rights in his registered copyrighted work by, *inter alia*, creating, reproducing and distributing advertising materials that made use of Plaintiff's copyrighted work, or authorizing the reproduction, distribution and use of the same advertising materials, all without authorization. Therefore, Defendants infringed Plaintiff's exclusive rights under 17 U.S.C. § 106.

53. Defendants are liable for vicarious copyright infringement, because they controlled the individuals who designed and produced the infringing advertising materials and financially benefited from their infringing conduct.

54. Defendants controlled the individuals who carried out the design, reproduction and distribution of the infringing advertising materials, since they authorized the advertisement proposals and the advertising strategies of their employees and their agents.

55. Upon information and belief, both Defendants stood to benefit financially from the individuals who designed and produced the infringing advertising materials. Both entities are under the same control and both benefited from the promotion of the ARC project, even if only 30-02 Associates appears to be the owner of the ARC building.

56. Upon information and belief, both Defendants also stood to benefit financially from these individuals' infringing conduct because they did not render payment to Plaintiff for his permission to use the Work.

57. Defendants willfully committed vicarious copyright infringement when they failed - through their right and ability to supervise the individuals who unlawfully used Plaintiff's Work-to prevent the infringement while maintaining a financial interest in the infringing activities.

58. Defendant's failure to properly supervise the individuals who designed, produced and distributed the infringing advertising materials is evident by their failure confirm whether the individuals had obtained a license for the pictures used in the advertising materials.

59. Upon information and belief, Defendants have derived direct financial benefit from the infringement of Plaintiff's copyrights, because they unlawfully used Plaintiff's Work for advertisement purposes.

60. As a direct and proximate result of Defendants' infringement of Plaintiff's copyrights and exclusive rights under the Copyright Act, Plaintiff is entitled to his actual damages plus Defendants' profits from infringement, as will be proven at trial.

61. Plaintiff is entitled to his costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

## AS AND FOR THE THIRD CAUSE OF ACTION
### (Contributory Copyright Infringement)

62. Plaintiff realleges and incorporates by reference each and every allegation contained in paragraphs "1" through "60" above as if fully set forth herein.

63. Defendants have infringed Plaintiff's rights in his registered copyrighted work by, *inter alia*, creating, reproducing and distributing advertising materials that made use of Plaintiff's copyrighted work, or authorizing the reproduction, distribution and use of the same advertising materials, all without authorization. Defendants infringed Plaintiff's exclusive rights under 17 U.S.C. § 106.

64. Defendants are liable as contributory copyright infringers for the infringing acts of other third parties.

65. Upon information and belief, Defendants have enabled, induced, facilitated, and materially contributed to each act of infringement by other real estate agencies and real estate related companies and websites, such as Douglas Elliman, that distributed or used the infringing materials.

66. Defendants were given notice of the Infringing activities.

67. Defendants had actual and constructive knowledge that the other third parties distributed, reproduced, used the infringing advertising materials. The copyright infringement by any third party could have not occurred without Defendants' wrongdoing.

68. Defendants' acts of contributory infringement were willful, intentional and in disregard of Plaintiff's copyright in the Work. Since Defendants knew that the Work did not belong to them and did not seek permission by its author to exploit it for commercial purposes.

69. As a direct and proximate result of Defendants' infringement of Plaintiff's copyrights and exclusive rights under copyright, Plaintiff shall be entitled to his actual damages plus Defendant's profits from infringement, as will be proven at trial.

70. Plaintiff is entitled to his costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment as follows:

a. That Defendant, its agents and servants be enjoined from infringing Plaintiff's copyright in any manner, specifically in connection with the promotion of its building projects or for any other commercial purpose;

b. That Plaintiff be awarded all profits of the Defendant plus all losses of Plaintiff, the exact sum to be proven at the time of trial;

c. That Plaintiff be awarded his reasonable license fee based on the industry standards for the commercial exploitation of an artwork for a multi-million real-estate project in New York.

d. That Plaintiff be awarded his attorneys' fees as available under the Copyright Act U.S.C. § 101 *et seq.*;

e. That Defendant account to Plaintiff for its profits and any damages sustained by Plaintiff arising from the foregoing acts of infringement;

f. That Plaintiff be awarded pre-judgment interest as allowed by law;

g. That Plaintiff be awarded the costs of this action; and

h. That Plaintiff be awarded such further legal and equitable relief as the Court deems proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury pursuant to Fed. R. Civ. P. 38.

Dated: New York, New York
      April 29, 2020

                              **PARDALIS &NOHAVICKA, LLP**

              BY:    /S/ELENI MELEKOU
                     ELENI MELEKOU, ESQ.
                     *Attorney for Plaintiff*
                     950 Third Avenue, 25th Floor
                     New York, NY 10022
                     Tel: (718) 777-0400
                     Fax: (718) 777-0599